UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Pedro Eduardo R.P.,

    Petitioner,

v.

Pamela Bondi, *Attorney General, United States Department of Justice*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Todd M. Lyons*, Acting Director of Immigration and Customs Enforcement*; and David Easterwood*, Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

    Respondents.

Case No. 26-cv-1323 (ECT/DJF)

REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Pedro Eduardo R.P.'s[1] *Verified Amended Petition for Writ of Habeas Corpus* (ECF No. 5) ("Petition"). For the reasons stated below, the Court recommends the Petition be granted.

BACKGROUND

I. **Pedro's Arrival in the United States**

Pedro is a citizen of Nicaragua who entered the United States on March 3, 2023. (*Id.* at 3.) Prior to coming to the United States, Pedro applied for humanitarian parole through a program the Department of Homeland Security ("DHS") implemented in 2023. (*Id.*; ECF No. 7 at 2.) That program allowed citizens of Nicaragua to apply for "advance authorization to travel to the United States and be considered for a discretionary grant of parole, on a case-by-case basis." Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1255, 1256 (Jan. 9, 2023), 2023

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in immigration matters.

WL 121511.  To qualify, a Nicaraguan citizen had to: (1.) "have a supporter in the United States who agree[d] to provide financial support for the duration of the [Nicaraguan citizen's] parole period"; (2.) "pass national security and public safety vetting"; and (3.) "fly at [his] own expense to an interior [port of entry], rather than entering at a land [port of entry]."  *Id.* at 1255.  Individuals who had "been removed from the United States within the prior five years," had "entered unauthorized into the United States between [ports of entry], Mexico, or Panama after" January 9, 2023, or were "otherwise deemed not to merit a favorable exercise of discretion" were ineligible for the program.  *Id.*  DHS's program granted beneficiaries parole for two years to allow them time to "seek humanitarian relief or other immigration benefits for which they may be eligible, and to work and contribute to the United States."  *Id.* at 1256.  Those who were "not granted asylum or any other immigration benefit during this two-year parole period generally [would] need to depart the United States prior to the expiration of their authorized parole period or [would] be placed in removal proceedings after the period of parole expires."  *Id.*

DHS granted Pedro's advance parole application, and he entered the United States on March 3, 2023.  (ECF No. 5 at 3; ECF No. 2-1 at 3.)  After arriving in the United States, Pedro applied for and was granted work authorization.  (ECF No. 5 at 13; ECF No. 2-4 at 2.)  He works at a Taco Bell in Brooklyn Park, Minnesota to help support his family, which includes his wife and two children, "the younger of whom is a one-year-old with Down syndrome who needs extensive medical attention and physical therapy."  (ECF No. 5 at 6.)  There is no evidence that Pedro has ever committed a crime aside from a parking ticket, which he paid.  (*Id.* at 7.)

Pedro applied for asylum on September 26, 2024, and received a letter stating that he "may remain in the United States until [his] asylum application is decided."  (ECF No. 2-2 at 2.)  But the letter cautioned him, saying, "Having a pending asylum application with [United States Citizenship

and Immigration Services] does not preclude U.S. Immigration and Customs Enforcement (ICE) or U.S. Customs and Broder Protection (CBP) from placing you into removal proceedings." (*Id.*) The letter further warned him that if he left the United States while his asylum application was pending, his application may be considered abandoned. (*Id.*)

On March 25, 2025, DHS terminated the advanced parole program for Nicaraguan citizens and sent a letter to Pedro dated March 29, 2025, stating:

> Effective March 25, 2025, [DHS] has exercised its discretion to terminate the categorical parole programs for aliens who are nationals of Cuba, Haiti, Nicaragua, and Venezuela, and their immediate family members.
>
> Your parole will terminate upon the earlier of (1) your original parole expiration date or (2) April 24, 2025. You should depart the United States now, but no later than the date of the termination of your parole. Failure to timely depart may have adverse immigration consequences.
>
> As of the termination of your parole, you may be subject to expedited removal pursuant to [8 U.S.C. § 1225] or removal proceedings pursuant to [8 U.S.C. § 1229a], either of which may result in your removal, unless you have departed from the United States or have obtained a lawful basis to remain within the United States.

(ECF No. 2-3 at 2.)

Pedro's parole expired on March 1, 2025, but there is no evidence to suggest his asylum application has been decided. (ECF No. 2-1 at 3.) Having been advised that he had permission to remain in the United States until his asylum application was resolved, Pedro did not depart the country. (ECF No. 5 at 4.) A few months after receiving the DHS letter, United States Citizenship and Immigration Services granted a five-year extension of his work authorization. (ECF No. 2-4 at 2.)

## II.   Pedro's Arrest and Detention

While Pedro was driving to work on the morning of February 10, 2026, a swarm of United States Immigration and Customs Enforcement ("ICE") agents surrounded his vehicle at a stoplight and pulled him from his car. (ECF No. 5 at 4-5.) They immediately handcuffed him and shackled

him by his ankles and waist. (*Id.* at 5.) Pedro pleaded with the officers, telling them his one-year-old child needed him and that he had "done everything legally." (*Id.*) The agents told him it was his own fault that he was arrested. (*Id.*) They then transported him to the Whipple Building in Fort Snelling, Minnesota, where he spent the night. (*Id.* at 6.) The officials there fed him nothing but "apples and cookies" and forced him to sleep on the floor. (*Id.*)

The following afternoon, officials gave him a sandwich and placed him on an airplane to Camp East Montana in El Paso, Texas, where he remains in custody. (*Id.* at 7.) According to Pedro, the conditions at Camp East Montana are decrepit. (*Id.*, describing showers as so unsanitary that Pedro refuses to use them for fear of getting a fungal infection.) He is also limited to one, three-minute phone call to his family per day. (*Id.*) While detained in El Paso, far away from his family, friends, and legal counsel, officials have "repeatedly attempted" to convince Pedro to sign documentation agreeing to voluntarily depart. (*Id.*) Officials also served him with a Notice to Appear, thereby initiating the removal process. (*Id.*); *see also* 8 U.S.C. § 1229.

### III. Pedro's Petition

Pedro filed a petition for a writ of habeas corpus on February 10, 2026, the same day ICE arrested him. (ECF No. 1.) The next day, the Court ordered Respondents[2] to show cause why the petition should not be granted. (ECF No. 4.) On February 13, 2026, Pedro filed an amended petition ("Petition"), asking the Court to: (1.) "[a]ssume jurisdiction over this matter"; (2.) enjoin Respondents from "transferring Petitioner out of the District of Minnesota pending the duration of these proceedings"; (3.) order "Respondents to show cause as to why Petitioner should not be released immediately"; (4.) issue a writ of habeas corpus ordering "Respondents to release Petitioner within 24 hours because his detention violated the Fourth and Fifth Amendments"; (5.) "[o]rder the

return of [Pedro's] belongings taken by Respondents at the time of his arrest and during his detention; and (6.) "[g]rant any other and further relief that this Court may deem just and proper." (ECF No. 5 at 16.)

## DISCUSSION

I.  **Fourth and Fifth Amendment Claims**

Pedro asserts two grounds in support of his Petition.  He argues that: (1.) his placement "in detention pending the resolution of ongoing immigration proceedings violates [his] constitutional rights to due process guaranteed in the Fifth Amendment"; and (2.) "his arrest and ensuing detention constitutes an unreasonable and unlawful seizure in violation of the Fourth Amendment and 8 U.S.C. § 1357(a)(2)." (ECF No. 5 at 11-15.)  Pedro's Fifth Amendment argument is premised on the multi-factor balancing test in *Matthews v. Eldridge*, 424 U.S. 319 (1976).  (ECF No. 5 at 11-12.)  Pedro argues that Respondents were obligated to provide him notice, an opportunity to be heard, and an individualized assessment of his flight risk or public safety risk prior to detaining him.  (*Id.* at 12-13.)  Pedro's Fourth Amendment argument is premised on the absence of a warrant and statutory limitations on immigration agents' ability to arrest individuals without a warrant.  (*Id.* at 14-15.)

Respondents respond to Pedro's arguments by referencing arguments asserted in other immigration habeas cases concerning the applicability of 8 U.S.C. § 1225(b)(2) to individuals such as Pedro.  (ECF No. 6 at 1-2.)  They also argue that, if the Court concludes that Pedro's detention falls under 8 U.S.C. § 1226 rather than Section 1225(b)(2), then the Court should order Respondents to conduct a bond hearing, because Respondents had an administrative warrant for Pedro's arrest as required by Section 1226.  (*Id.* at 2.)  Respondents have produced the warrant that immigration agents allegedly served on Pedro at the time of his arrest.  (ECF No. 6-1.)

---

[2] Respondents are various federal officials responsible for enforcing the nation's immigration

Respondents' arguments are completely unresponsive to the issues raised in the Petition. Pedro does not assert that he is being unlawfully detained under Section 1225(b)(2), or that his detention is subject to Section 1226(a). Indeed, in his reply, Pedro asserts that his case is materially different than the cases implicating the Section 1225(b)(2) and Section 1226(a) issues that Respondents briefly discussed. (ECF No. 7 at 4-5.) The Court directed Respondents to file an answer to the Petition that included "A reasoned memorandum of law and fact explaining Respondents' legal position on Petitioner's claims." (ECF No. 4 at 2.) The Petition did not cite Section 1225(b)(2) or Section 1226(a), yet Respondents' response focuses entirely on those two statutes. It is not role of the Court to carry Respondents' burden by speculating as to what their defenses to those arguments might be. Respondents' failure to respond to Pedro's Fifth Amendment and Fourth Amendment arguments constitutes a waiver of any challenge to those arguments. *See Estephanny P. v. Bondi*, No. 26-cv-198 (ECT/JFD), 2026 WL 115067, at *1 (D. Minn. Jan. 15, 2026). The Court recommends granting the Petition on that basis.

**II.    Section 1225(b)(2) and Section 1226(a)**

In an abundance of caution, the Court further finds that the arguments Respondents raised are unpersuasive. Hundreds of habeas cases have been filed in recent months in this District alone because Respondents have relied on a novel interpretation of Section 1225(b)(2) as justification to detain hundreds—if not thousands—of noncitizens who have been living in the United States for many months, years, and sometimes decades. The presiding judge in this case, the Honorable Eric C. Tostrud, has previously held that, because such individuals are not "seeking admission," *see* 8 U.S.C. 1225(b)(2), that provision does not apply to them. *See Fernando F.P.D. v. Brott*, No. 25-cv-4455 (ECT/ECW), 2025 WL 3675151, at *2 (D. Minn. Dec. 17, 2025). The undersigned agrees, *see*

---

laws. (*Id.* at 3-4.)

*Adriano L.V. v. Noem*, No. 26-cv-269 (MJD/DJF), 2026 WL 184570 (D. Minn. Jan. 18, 2026), *report and recommendation adopted*, 2026 WL 194401 (Jan. 23, 2026), and accordingly concludes that Pedro is not subject to the detention provisions of Section 1225(b)(2).

### III.   The Warrant

Respondents also argue that if Pedro's detention is regulated by Section 1226(a), then the Court should order a bond hearing rather than immediate release, because agents arrested Pedro pursuant to a warrant.  (ECF No. 6 at 2; ECF No. 6-1.)  "Issuance of a warrant is a necessary condition" precedent for detention under Section 1226(a).  *Ahmed M. v. Bondi*, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026).  Failure to satisfy this requirement is grounds for the immediate release of an individual detained under Section 1226(a), *see Ahmed M.*, 2026 WL 25627, at *3; *Juan S.R. v. Bondi*, 26-cv-5 (PJS/LIB) (D. Minn. Jan. 12, 2026) (ECF No. 8); *Byron V.G. v. Bondi*, 26-cv-99 (KMM/DJF) (D. Minn. Jan. 15, 2026) (ECF No. 8).

Respondents have produced a "warrant" (ECF No. 6-1), but upon reviewing that document the Court finds it is so deficient and potentially misleading as to carry no legal weight.  The warrant has two parts.  The first part states the name of the arrestee and the reasons why the authorized immigration officer believes the arrestee is removable from the United States.  There is a name and signature line for the authorizing immigration agent.  The second part is titled "Certificate of Service."  It has a name and signature line for the officer who serves the warrant on the arrestee and attests to the circumstances of service.  Respondents' warrant lacks any signature or name in the first part, i.e., the part that authorizes arrest.  This obvious omission means this warrant cannot be understood to be "issued" as required under Section 1226(a).  To hold otherwise would mean that issuance and service of a warrant would functionally be the same.  The serving officer would only need to present an unsigned warrant to the arrestee to comply with Section 1226(a).  Yet the

Department of Homeland Security's own regulations define these two activities as distinct from one another and empower different sets of immigration officers to perform them. *See* 8 C.F.R. § 287.5(e)(2)-(3). The Court therefore concludes that the warrant's lack of a signature by an authorized, issuing immigration agent renders the warrant legally void.

Not only is the warrant facially deficient, but it also lacks credibility. The warrant, dated February 10, 2026, states that the unidentified authorizing immigration agent determined there was probable cause to believe "Pedro Eduardo Ruiz Poreas [sic]" is removable from the United States because of "the pendency of ongoing removal proceedings against the subject." But Pedro has produced evidence indicating that no case under his A-number was pending in the Executive Office of Immigration Review on February 10, 2026, and thus no removal proceedings had commenced against him at the time of his arrest. (ECF No. 2-5.) In fact, he reports that immigration officials did not serve him with a Notice to Appear, the document that initiates removal proceedings, until his detention in El Paso, Texas a few days later. (ECF No. 5 at 7); *see* 8 U.S.C. § 1229(a). There is therefore reason to believe that this warrant was completed after Pedro's arrest in an effort to mislead any court that might scrutinize the circumstances of Pedro's arrest. The absence of any declaration attesting to the truthfulness of the warrant's representations makes the circumstances of its production even more dubious.[3] For all these reasons, the Court does not believe Respondents complied with the warrant requirement of Section 1226(a) when they arrested Pedro.

---

[3] The Court has no reason to believe Respondent's counsel intentionally sought to mislead the Court. However, the Court notes that this is not the first case the Court has seen in recent months in which the government appears to have relied upon false or misleading information related to its ongoing immigration enforcement operations. *See, e.g., United States v. Alornja*, 26-mj-23 (PAM/DLM) (D. Minn. Feb. 12, 2026) (ECF No. 48). The Court reminds counsel of the need to make appropriate inquiries to ensure all documents submitted for the Court's consideration are both accurate and non-misleading. *See* Minn. R. Prof. Conduct, Rule 3.3.

**IV.     Objections to this Report and Recommendation**

Given the expedited nature of these proceedings, the Court is altering the standard timelines for Respondents to file objections to this Report and Recommendation. *See* L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline*.") (emphasis added). Respondents must file any objection to this Report and Recommendation on or before **February 18, 2026**. Pedro may file a response to any objections on or before **February 19, 2026**.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Pedro Eduardo R.P.'s *Verified Amended Petition for Writ of Habeas Corpus* (ECF No. 5) be **GRANTED**.

2. Respondents be ordered to release Petitioner Pedro Eduardo R.P. from custody:

    A. As soon as practicable;

    B. Inside the State of Minnesota;

    C. At a safe time and place communicated in advance to counsel; and

    D. With ***all*** of Petitioner's personal effects in Respondents' possession, such as driver's license, immigration papers, passport, cell phone, and keys.

Dated: February 17, 2026              *s/ Dulce J. Foster*
                                      Dulce J. Foster
                                      United States Magistrate Judge

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. For the reasons previously stated, Respondents must file any objection to this Report and Recommendation on or before **February 18, 2026**. Petitioner may file a response to any objections on or before **February 19, 2026**.